UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
 14-CR-130S

SREEKRISHNA M. CHERUVU,

          Defendant.

## I. INTRODUCTION

Defendant Sreekrishna M. Cheruvu ("Dr. Cheruvu") moves to withdraw the guilty plea he entered on May 25, 2018. The Government opposes Dr. Cheruvu's motion. For the reasons stated below, Dr. Cheruvu's motion is GRANTED.

## II. BACKGROUND

Familiarity with the facts of this case is presumed. Briefly, the procedural history leading up to Dr. Cheruvu's motion to withdraw his plea is as follows. Following the commencement of a jury trial and presentment of testimony therein on a 13-felony count superseding indictment, Dr. Cheruvu entered a plea of guilty on May 25, 2018, pursuant to a Rule 11(c)(1)(C) plea agreement, to one misdemeanor count of Theft or Embezzlement in Connection with Health Care Matters in violation of 18 U.S.C. § 669(a). (Docket Nos. 221, 222). Sentencing was set for September 5, 2018. Thereafter, upon Dr. Cheruvu's request on August 13, 2018, sentencing was adjourned to November 28, 2018. On November 2, 2018, Dr. Cheruvu filed a motion for leave to serve subpoenas pursuant to Rule 17(c), which this Court denied and for an adjournment of sentencing. (Docket No. 243). Sentencing was then rescheduled for January 16, 2019.

On January 15, 2019, the eve of sentencing, Dr. Cheruvu filed the instant motion

1

to withdraw his guilty plea. (Docket No. 244). In his motion, he makes two arguments. First, under Rule 11(d)(1), he has the absolute right to withdraw his guilty plea because it had not yet been accepted by the Court. Second, even if his guilty plea has already been accepted, he is entitled to pursue the motion for fair and just reasons under Rule 11(d)(2)(B), because his guilty plea did not comply with Rule 11—namely, he did not understand the nature and circumstances of the offense charged and there was no factual basis for the plea. The principle issue animating the second argument of Dr. Cheruvu is that Dr. Cheruvu neither understood the "willfulness" element of the crime charged nor does a factual basis exist to support a guilty plea to that element of the crime charged. The Government filed a response in opposition to Defendant's motion. (Docket No. 246). Thereupon, the Court invited the parties to submit additional briefing on the issue of the alleged Rule 11 deficiencies. (Docket Nos. 250, 252, 256).

On January 16, 2019, the parties appeared before the Court. A hearing was held at which Dr. Cheruvu confirmed his desire to move forward with his motion, but agreed to consider consulting with an independent attorney to discuss the ramifications of pursuing his motion to withdraw his guilty plea. Dr. Cheruvu thereafter filed a Declaration with the Court on January 30, 2019, stating that he had "thoroughly discussed the possible consequences of pursing the motion" with both his retained counsel as well as an independent attorney, and that he "remain[ed] fully committed to pursuing the motion to withdraw [the] guilty plea." (Docket No. 255).

On February 6, 2019, the parties appeared for a status conference before the Court. (Docket No. 258). Dr. Cheruvu reiterated that he remained committed to pursuing his motion to withdraw his plea of guilty. Dr. Cheruvu further stated that he wished to be

represented at trial by his retained counsel, Mark Schamel.

### III. DISCUSSION

Dr. Cheruvu primarily argues that he has demonstrated fair and just reasons to withdraw his plea of guilty because the record reveals that he neither understood the nature of the charge nor that a factual basis existed for his plea. (Docket No. 244 at 18). For the following reasons, Dr. Cheruvu's motion will be granted.

"A guilty plea should be an intelligent choice among the alternative courses of action open to the defendant." United States v. Adams, 448 F.3d 492, 497–98 (2d Cir. 2006) (internal quotation marks and citations omitted). Accordingly, Rule 11 requires district courts, before accepting a plea, to "inform the defendant of, and determine that the defendant understands," among other things, "the nature of the charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). "The rule is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" Adams, 448 F.3d at 499-500 (quoting McCarthy v. United States, 394 U.S. 459, 467, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969)).

A defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence" if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).[1] "While this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for

---

[1] Notwithstanding Dr. Cheruvu's argument that he is entitled to withdraw his plea "for any reason or for no reason," (Docket No. 244-1 at 12-15), he is not entitled to do so on either basis in this case because the Court has already accepted his guilty plea. (Docket No. 242 (Tr.) at 67).

3

withdrawal." United States v. Doe, 537 F.3d 204, 210 (2d Cir. 2008) (internal quotation marks omitted). "Whether to grant the motion falls within the broad discretion of the trial court." United States v. Fernandez, 734 F. Supp. 599, 602 (S.D.N.Y. 1990), aff'd, 932 F.2d 956 (2d Cir. 1991) (citing United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989)); Adams, 448 F.3d at 498 (a district court's ruling on a motion to withdraw a guilty plea is reviewed for abuse of discretion).

The Second Circuit has identified several factors that a district court may consider in determining whether a defendant has shown a "fair and just reason" for the withdrawal of his plea:

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea. Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea.

United States v. Schmidt, 373 F.3d 100, 102–03 (2d Cir. 2004) (internal citations and quotation marks omitted).

The first factor weighs in favor of Dr. Cheruvu. In his filings, he has asserted innocence, specifically arguing that "he would not have pleaded guilty had he known that conscious avoidance did not suffice to prove willfulness." (Docket No. 244-1 at 22). The Government argues that Dr. Cheruvu's claim of innocence cannot be credible given "his sworn statements during his plea colloquy" and the fact that he "admitted his guilt to the charge in open Court." (Docket No. 246 at 11). But as discussed in further detail below, the plea colloquy transcript reveals that Defendant did not fully understand the nature of the charges to which he was pleading. He twice stated that he did not know whether his

4

conduct was "willful," and that his guilty plea was based on a misunderstanding of the elements of the offense charged. Cf. United States v. Gutierrez, No. 16-CR-114 (VAB), 2017 WL 2951603, at *4 (D. Conn. July 10, 2017) ("During his change of plea hearing, Mr. Cavienss had acknowledged his guilt with respect to the offense conduct, describing his conduct in his own words."). Accordingly, the Government's opposition arguments on factor one are misplaced.

The second factor, however, weighs against Dr. Cheruvu. Eight months time elapsed between his May 2018 guilty plea and his January 2019 motion to withdraw, filed on the eve of his scheduled sentencing. Courts in this Circuit have held that lengthy delays weigh against a Defendant seeking to withdraw his plea. See, e.g., United States v. Obiorah, 536 F. App'x 53, 55 (2d Cir. 2013) (summary order) (eight months); United States v. Grimes, 225 F.3d 254, 259 (2d Cir. 2000) (five months); United States v. Wilson, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (two months), aff'd, 523 F. App'x 30 (2d Cir. 2013) (summary order); United States v. Baum, 380 F. Supp. 2d 187, 206-07 (S.D.N.Y.), aff'd sub nom. United States v. Best, 139 F. App'x 366 (2d Cir. 2005) (three and a half months).

As to the third factor, the Government argues it would be "severely prejudiced" if Dr. Cheruvu is permitted to withdraw his plea. This is so, the Government states, because it will have to re-prepare for a trial at which proof already had been introduced against Dr. Cheruvu. The indictment was returned in May of 2014, and since the start of the trial, "witness' memories of events have likely diminished" and other witnesses—patients of Dr. Cheruvu—have been informed that they are no longer needed. (Docket 246 at 13-14). While the Court is sympathetic to these concerns, the Government has not

convincingly demonstrated how "it will be in a worse position than it would have been had [Dr. Cheruvu] proceeded to trial without pleading guilty." United States v. Alazzam, No. CRIM. 3:08CR127SR, 2009 WL 1941833, at *5 (D. Conn. July 6, 2009). Accordingly, this factor weighs against the Government and in favor of Dr. Cheruvu.

Finally, and most critically, Defendant has raised a "significant question" as to the validity of his plea. Schmidt, 373 F.3d at 102–03. A thorough examination of the record reveals that Dr. Cheruvu may have fundamentally misunderstood the nature of the charges against him. There is no clear indication from the plea proceeding that "the conduct which [Dr. Cheruvu] admit[ted] constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty," which is required in order for a plea to comport with Rule 11. McCarthy, 394 U.S. at 467, 89 S. Ct. at 1171. This warrants granting Dr. Cheruvu's motion. Adams, 448 F.3d at 499 ("A district court must grant a motion to withdraw a plea when 'a defendant was not provided with the "mix of information" required by Rule 11, unless, of course, that error can be deemed harmless because it would not have affected the defendant's decision to plead guilty.'" (quoting United States v. Gonzalez, 420 F.3d 111, 131 (2d Cir. 2005))).

Defendant's plea agreement lists the elements of the One-misdemeanor Count of violating 18 U.S.C. § 669(a) as follows:

1. That the defendant converted without authority assets belonging to a health care benefit program, to wit: Blue Cross Blue Shield of Western New York d/b/a HealthNow; and
2. That the defendant acted knowingly and willfully.

(Plea Agreement ¶ 3(a)-(b)).

The record casts doubt as to whether Dr. Cheruvu understood that his conduct fell within the crime charged—specifically, whether he acted "willfully." The conduct

6

underlying Dr. Cheruvu's offense in the Plea Agreement is as follows: in his capacity as a physician, Dr. Cheruvu submitted claims to various health care benefit programs for medical services he purportedly rendered. Specifically, Dr. Cheruvu caused the submission of a healthcare claim form for reimbursement for services rendered to patient "K.S.," and in doing so, "knew that he personally provided no services to 'K.S.'" (Plea Agreement at 2-3). The crime requires that Dr. Cheruvu acted "knowingly and willfully"—i.e., that he knowingly and willfully converted without authority assets belonging to a health care benefit program. See 18 U.S.C. § 669(a). As to the "knowing" element, it requires "factual knowledge as distinguished from knowledge of the law." United States v. Howard, 214 F.3d 361, 363 (2d Cir. 2000) (internal citation and quotation marks omitted). As to the "willfulness" element, it requires both "knowledge that [the] conduct [i]s unlawful and with the intent to do something that the law forbids." United States v. Henry, 888 F.3d 589, 601 (2d Cir. 2018) (emphasis added); see also Bryan v. United States, 524 U.S. 184, 190, 118 S. Ct. 1939, 141 L.Ed.2d 197 (1998) ("A person acts willfully if he acts intentionally and purposely with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law.") (internal citation and quotation marks omitted). So, to satisfy the Rule 11 requirements, a court must "ensure[] that a sufficient factual basis exist[ed] on the record for the plea" that Dr. Cheruvu acted both knowingly and willfully—i.e., that he acted "with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law." Bryan, 524 U.S. at 190, 118 S. Ct. 1939.

At the plea colloquy, counsel for Dr. Cheruvu informed the Court that Dr. Cheruvu had reservations with respect to the "willful" language in the plea agreement. (Tr. at 61).

7

The Court recessed to allow Dr. Cheruvu to confer with his counsel. (Tr. at 63). When Dr. Cheruvu returned a discussion on the record ensued involving the doctrine of "conscious avoidance"—a doctrine that can support a factual basis for a crime involving a "knowing" element, but which is separate and apart from the "willful" element of a criminal offense. The exchange occurred on the record occurred as follows:

> [DEFENSE COUNSEL]: Your Honor, thank you very much for that moment. I had an opportunity to both speak to government counsel and do just a few minutes of research here in the courtroom. The Internet's a wonderful thing. And the Court may recall that one of the jury instructions that government counsel had submitted in the trial in this matter was for a conscious avoidance instruction, commonly referred to as the willful blindness instruction. And looking at conscious avoidance and, in fact, just reviewing a 2017 case in this circuit, it doesn't even require anymore active efforts. The -- the cases in this circuit don't seem to even indicate you have active efforts, but that, in fact, if there's a known risk. And in talking to Dr. Cheruvu, he is comfortable and is willing to enter the plea of guilty, and on the issue of willfulness, realizes that he did not and should have done much more than he did to determine the appropriate CPT code for billing on August the 7th, 2012.
>
> And more importantly, as it relates to [the patient], he should have understood, he had an obligation to understand under his insurance contract with HealthNow, that he should have understood that when he had a noncertified provider, Dr. Herman, that it required a different type of recordkeeping, a different type of billing than what he submitted. And his failures to properly determine how to do that, to properly determine how to properly submit a form 1500 when another doctor was providing services while he was out of the country, that was a -- certainly enough of a known risk as a doctor submitting those bills that would rise to the level of a willfulness standard.
>
> So I think on the theory there for the willfulness, which is frankly the only catch, Dr. Cheruvu would be willing to answer that question of guilty in the affirmative in that he should have and realizes he should have done more to determine his obligations with regard to that submission.

(Tr. at 64-65).

> THE COURT: And from the government's standpoint, that adequately addresses the essential elements with respect to count 1? Ms. O'Donnell?

8

>MS. O'DONNELL: Judge, I think the Court has already read the essential elements; however, it adds a point of clarification or explanation. I don't think any further -- I mean, the -- the Defendant has already said that he understands the charge, understands the elements, and I think we could just proceed to the -- where Your Honor was getting to in the plea where we took a break.

(Tr. at 65-66)

>THE COURT: All right. With respect to count 1 of the superseding information, which charges you with violating Title 18, Section 669(a) in or about August 7th, 2012, in the Western District of New York, how do you plead, guilty or not guilty?
>
>(Conference between the Defendant and counsel)
>
>THE DEFENDANT: Your Honor, based on what Mr. Schamel discussed and consistent with his statements, I plead guilty.

(Tr. at 66).

Dr. Cheruvu admitted that his conduct amounted to "conscious avoidance," which he misunderstood to be sufficient to support a finding that he acted "willfully." "A conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact." United States v. Coplan, 703 F.3d 46, 89 (2d Cir. 2012); see also United States v. Fofanah, 765 F.3d 141, 144–45 (2d Cir. 2014) (explaining that conscious avoidance doctrine permits jury to find defendant "had culpable knowledge of a fact" where evidence shows he "was aware of a high probability of the fact . . . and consciously avoided confirming" it). As evidenced from the record, counsel for Dr. Cheruvu stated as follows: "on the theory there for the willfulness, which is frankly the only catch, Dr. Cheruvu would be willing to answer that question of guilty in the affirmative in that he should have and realizes he should have done more to determine his obligations with regard to that submission." (Tr. at 65). Then, premising it on his

9

attorney's misrepresentations with respect to the willful element, Dr. Cheruvu entered a plea of guilty. In other words, Dr. Cheruvu only admitted that he "intentionally avoided confirming the fact," Coplan, 703 F.3d at 89; but he did not admit that he acted "with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law"—i.e., that he acted willfully. Bryan, 524 U.S. at 190, 118 S. Ct. 1939. The Second Circuit has flatly stated that "although a finding of conscious avoidance may be a substitute for actual knowledge, it cannot substitute for the finding of the element of 'willfulness' necessary to prove the crimes charged." United States v. Henry, 888 F.3d 589, 601 (2d Cir. 2018). Given the above, Dr. Cheruvu did not fully understand the nature and circumstances of the offense to which he was pleading guilty.

Moreover, at the plea colloquy, Defendant twice stated that he did not know whether his conduct—specifically the manner in which he was submitting claims to health care companies—ran afoul of the law. (See Tr. at 11-12) ("Whether I was billing right or wrong, I don't know. I didn't know. I didn't probably care. Maybe I should have gotten much better help . . . At the same time, I knew I was helping my patients' families, patients, and doing the best. Always I kept my phone very close to me, whether I'm in this country or India. I took calls from India from patients. This may not be legal. I don't know. May be legal. I don't know. I even prescribed Suboxone for somebody struggling when I was in India."). This appears to further support the Defendant's contention that he did not understand the nature of the charges against him (i.e., the willfulness element), and that no factual basis existed for his plea of guilty. In McCarthy, the Supreme Court found Rule 11 violations warranting vacatur of a guilty plea under similar circumstances. There, the Defendant had "pleaded guilty to a crime that require[d] a 'knowing and willful'

attempt to defraud the Government of its tax money." McCarthy, 394 U.S. at 470. But "throughout his sentencing hearing, [defendant] and his counsel insisted that his acts were merely 'neglectful,' 'inadvertent,' and committed without 'any disposition to deprive the United States of its due.'" Id. The Supreme Court found that "[r]emarks of this nature cast considerable doubt on the Government's assertion that [defendant] pleaded guilty with full awareness of the nature of the charge." Id. Here, too, the record casts doubt that Dr. Cheruvu was fully aware that he was admitting to acting willfully.

"A lack of a factual basis for a plea is a substantial defect calling into question the validity of the plea. 'Such defects are not technical, but are so fundamental as to cast serious doubt on the voluntariness of the plea,' and require reversal and remand so that the defendant may plead anew or stand trial." Adams, 448 F.3d at 502 (quoting Godwin v. United States, 687 F.2d 585 (2d Cir. 1982) (internal citations omitted)). Because Dr. Cheruvu did not admit that he "act[ed] intentionally and purposely with the intent to do something the law forbids, that is, with the bad purpose to disobey or disregard the law," Bryan, 524 U.S. at 598-99, "an element required for conviction and sentencing" under 18 U.S.C. § 669(a), "his allocution was factually insufficient to support his plea," Adams, 448 F.3d at 499. Accordingly, because there is no sufficient factual basis on the record that Defendant acted willfully, the Court will grant Defendant's motion because he has demonstrated a fair and just reason warranting that relief.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to withdraw his plea of guilty (Docket No. 244) is GRANTED.

A status conference remains scheduled for March 27, 2019 at 12:00 pm, at which time a trial date will be finalized.

Time is excluded through and including March 27, 2019 pursuant to 18 U.S.C. § 3161(h)(7)(A) and this Court specifically finds that the ends of justice outweigh the best interest of the public and the defendant in a speedy trial.


SO ORDERED.

Dated:   March 5, 2019
         Buffalo, NY

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge